[Crim. No. 3217. In Bank.—July 17, 1929.]

THE PEOPLE, Respondent, v, CHARLES A. KOEHN, Appellant.

Carl E. Lindsay and Lindsay & Gearhart for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

SEAWELL, J.—The defendant was convicted, September 25, 1928, upon the second trial, in the superior court of the county of Fresno, on both counts of an information which accused him in count one with making an attempt to commit murder, in that, on or about May 17, 1928, he did wilfully, unlawfully and with malice aforethought, attempt to kill and murder the Honorable C. E. Beaumont, who was then and there a judge of the superior court of the state of California, in and for the county of Fresno. The manner of the attempt to kill is alleged to have consisted in placing a certain explosive and inflammable material at and near the dwelling-house occupied by said Honorable C. E. Beaumont, located at 3957 Kerckhoff Avenue, in the city and county aforesaid, to which a fuse was attached and lighted by the defendant with the intent that said fuse would ignite said inflammable material and cause an explosion, which would eventuate in the death of said Honorable C. E. Beaumont.

The second accusatory count of the information is substantially in the language of section 601 of the Penal Code, and alleged that upon the same day as alleged in count one the defendant "did wilfully, unlawfully and maliciously put, place, deposit and attempt to explode a certain nitroglycerine explosive substance at and near a certain dwelling house occupied by one C. E. Beaumont, located at 3957 Kerckhoff

avenue, in the city and county aforesaid, with intent to injure, intimidate and terrify the said C. E. Beaumont.''

At the first trial, which resulted in a disagreement by the jury, the defendant was represented by counsel of well-recognized ability. A demurrer, upon general and special grounds, was lodged against each count of the information, the most important objection and the objection specially urged upon this appeal being that more than one offense was charged therein, to wit, ''the offense of attempt to commit murder, and the offense of malicious use of explosives, and it does not appear on the face of said information that said two offenses so charged were connected together in their commission, but that said two offenses so charged are different offenses, not connected together in their commission, and not different statements of the same offense, and not offenses of the same class of crimes or offenses.'' In the respect above pointed out it is urged that said counts violate section 954 of the Penal Code, which provides that an indictment or information may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant may be convicted of any number of the offenses charged, and each offense upon which the defendant is convicted must be stated in the verdict. Said section further provides that the court may, in the interest of justice, order that the different offenses or counts set forth in the indictment or information be tried separately or divided into two or more groups and each of said groups tried separately. A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count.

Appellant made two objections in the trial court, which were overruled, as to the sufficiency of the information, and which are renewed upon this appeal, to wit, first, that the two offenses are not of the same class; second, that it does not appear upon the face of the information that the two crimes were connected together in their commission within the meaning of section 954 of the Penal Code.

If the last objection is not tenable, and we are of the view that it is not, it becomes unnecessary to consider the first ground of objection. Counsel's contention in the court below, as renewed here, was that the information does not show upon its face that the two crimes were connected together in their commission. A number of authorities are cited to the effect that in charging under said section 954 it is necessary that care be taken to make it clearly appear that the offenses set forth relate to but one act, transaction or event. ██ No doubt it is better practice to allege in specific terms that the offenses charged do all relate to the same act, transaction or event, as suggested by some of the authorities, but where it appears clearly from the allegations of the indictment or information that such is the case, and a contrary or other construction would do violence to common understanding, an allegation of that which obviously appears is not required.

The counts of the information are identical as to the description of the person upon whom said act was intended to operate, and also as to place, time and manner of accomplishing said unlawful act, to wit, by the use of an explosive placed at or near the residence of Judge Beaumont, situate at 3957 Kerckhoff Avenue, in the city of Fresno. The act as described in each count is the same, and from said act the jury was to determine upon a trial of the case whether the accused placed said explosives at the door of said judge with intent that he should be killed thereby, or, as contended by defendant at the trial, to intimidate or terrify the judge to the extent that he would decide a case then pending in his court, in which the defendant was a party, in his favor.

██ When from a single statement of facts it appears that a crime has been committed and there exists a doubt as to the particular crime the accused intended to commit, it is entirely proper to set forth the facts and circumstances in separate counts and charge the accused with as many specific crimes as the facts will warrant. The specific crime intended, or attempted to be committed, is a matter resting with the jury. The demurrer was properly overruled.

Upon arraignment the accused was represented by counsel. He entered the general plea of not guilty and the special plea "not guilty by reason of insanity." This trial resulted in a disagreement by the jury. Upon the second

trial, having dismissed his attorneys, he appeared *in propria persona* and at the outset of the trial requested and was granted leave to withdraw the plea of "not guilty by reason of insanity." At the conclusion of the trial the jury found the defendant guilty on both counts, but in each verdict interlined the words "and for obvious reasons, ask the Honorable Court to exercise leniency in the measure of punishment to be inflicted."

Two of his former counsel entered his defense after conviction and are prosecuting this appeal. The usual motions were made for a new trial, arrest of judgment, etc., but each was denied and the defendant was sentenced under both counts, said sentences to run consecutively. An appeal was taken directly to the District Court of Appeal, First Appellate District, Division Two, and said court affirmed the judgment of conviction on the first count, to wit, an attempt to commit murder, and reversed the judgment of conviction upon the second count, which charged malicious use of explosives. Both the People and the defendant thereafter petitioned for a hearing by this court, which petition was granted, and the cause was transferred to this court for hearing and decision.

We are satisfied that the pleading does not violate the rule as announced in *People* v. *Plath,* 166 Cal. 227 [135 Pac. 954], and other cases decided before and subsequent to the Plath case, to the effect that it must clearly appear upon the face of the information that the offenses set forth therein relate to but one act, transaction or event. The pleading is in entire harmony with the provisions of said section 954 in its present amended form, and which section further provides that the prosecution may not be required to elect between the different offenses or counts set forth in the information, but the defendant may be convicted of any number of the offenses charged, each offense being stated in the verdict.

While the pleading is in harmony with the provisions of said section, that is to say, the jury was free to determine from the act the particular crime that the accused intended to commit, we are of the view, from the nature of the two offenses charged, that he could not be guilty of both. The inconsistency of so holding will be latterly considered.

The circumstances of the act of which the defendant was convicted being so unusual, both in their inception and attempted execution, have caused us to examine into the record in an effort to discern as nearly as it may be done the motive of the accused. Our investigation has not proved to be fruitful. Defendant was married and of the age of about sixty-seven years at the time he committed the self-confessed act. He had resided for a period of thirty years upon lands which he had acquired, situated in the Mojave desert, and latterly became involved in litigation. An action for damages in a large sum of money on a breach of contract in connection with the operation of certain mining properties owned by him was commenced against him in the superior court of Kern County, and the Honorable C. E. Beaumont of the county of Fresno was assigned to try said cause. The defendant, although represented by counsel, insisted upon personally conducting his cause, and did at times assume control of the proceedings. The judge, at the conclusion of the trial, requested that oral argument be dispensed with and that the cause be submitted on briefs. Defendant felt disappointed and dissatisfied that he was not given an opportunity to orally argue the cause. He, as well as his attorney, thereafter submitted briefs. The cause being submitted, the judge repaired to his home at the city of Fresno. During the trial the defendant had offered two or three letters written by himself and others which were excluded from evidence by the court. By this and other rulings and observations made by the court during the progress of the trial the defendant presaged a decision against him. Having had a large experience with nitroglycerine and explosives, according to his story, he conceived the plan of placing a nitroglycerine bomb, which he had perfectly constructed, at the doorstep of the judge, under cover of night, to be found by him as he went to the front door in quest of his morning newspaper. The bomb was placed at about 1 o'clock A. M. and discovered by the judge later the same morning. The bomb, which weighed a fraction more than three pounds, was equipped with fuse and cap, and upon it was placed a coffee can containing gasoline. The bomb contained all the ingredients essential to cause a violent and destructive explosion. The fuse had the appearance of being charred; that is, it appeared to have been lighted and burned to a certain

point and from some cause became extinguished. Shortly after he had thus placed the bomb, the defendant, by reason of his unusual conduct, was detained by a police officer, and his automobile, which he had left parked in a conspicuous place, was searched and found to contain pieces of fuses and other scraps of telltale evidence which readily connected the defendant with the placing of the bomb after its discovery was made. The defendant for a period denied any connection with the placing of the bomb, but finally admitted that he had made and placed the bomb on the judge's porch near the front door. He also stated during the trial, as a witness, that he had carried the bomb in his automobile for two weeks before depositing it, wrapped in such a manner as to protect it from detonation or explosion.

His claim at the trial was that he had charred the fuse before it was placed on the judge's porch, and that it was worthless as a fuse and it could not have ignited or set the bomb off. His story, told as a witness, was that it was not his purpose or intention to injure the judge, but solely to intimidate and terrify him into doing justice in his cause. He also testified that he expected to be, and it was his purpose to be, apprehended for his act in order that the attention of the public might be called to any injustice that might be done him by an adverse decision, which would mean financial ruin to him.

█ Returning to the question whether a conviction on both counts of the information may be sustained, we are of the view that the two conclusions are inconsistent with each other and cannot be reconciled by the application of any rule by which the purposes of a rational mind may be determined. If the defendant's purpose to kill the judge had succeeded, no decision would have been rendered by him and the slaying would have been barren of its terrorizing example even as to another judge who might be called to try the cause, unless it became known that the defendant was responsible for the homicide. If, on the other hand, the bomb was placed near the front door of the judge's residence with the intent of terrorizing and intimidating him, the identity of the defendant as the author of the deed must necessarily become known to him in order to produce the result sought to be accomplished. The act seems to be devoid of rationality, whatever may have been the end attempted to be

attained. From the nature of the case we are unable to perceive upon any theory how the defendant could have intended to commit both of the offenses charged in the information. That he was properly convicted of the malicious use of explosives with the intention of terrifying and intimidating the judge of the court was the defendant's repeated admission at the trial of the case, both as a witness and in the conduct of said cause. His defense was predicated on the assumption that the exigency of the situation justified the means resorted to by him to save himself from hazards which threatened. That the defendant was, to say the least, laboring under abnormal mental agitation at the time of and for some time prior to the placing of the bomb at or near the door of the judge's residence cannot be doubted. It.is also equally true that he was able to distinguish between right and wrong and knew that he was doing a wrongful and wicked act at the time he committed it. The legal question as to mental responsibility is, Did the accused know the nature and quality of the act which he committed, and, if so, did he know it was a wrongful act and one forbidden by law? From the admissions of the .defendant alone, as well as the convincing circumstances of the commission of the act, we are forced to make an affirmative answer to the interrogatory. A person may be unable to reason correctly upon the plan which he is formulating to execute a crime, and notwithstanding his defective reasoning be responsible to the law if he comes within the legal test of the rule above stated. Such is the policy of the law. While the defendant withdrew from the consideration of the law his mental status, we have considered it as a matter of law for the reason that the case cannot well be discussed without doing so. The punishment and confinement prescribed by statute for a violation of section 601 of the Penal Code, defining the malicious and unlawful use of explosives, is from one year to the end of life, in the state prison, and for an attempt to commit murder, not more than twenty years in the state prison. (Sec. 664, Pen. Code, subd. 1.) Said section 601 makes the offense complete when any person maliciously places or deposits, explodes or attempts to explode near any building or dwelling-house any dynamite, nitroglycerine or other chemical compound or explosive "with the intent to injure, intimidate or terrify any human being." The placing of

the explosives was done with the expressed purpose of intimidating and terrifying Judge Beaumont. The penalty for such an act, by reason of the lethal and destructive properties of the substances from which bombs are constructed and the terrifying effect which nitroglycerine and kindred explosives have upon the minds of the public, is greater than the penalty prescribed for an attempt to kill a single person. Therefore, so far as the punishment for the two crimes is concerned, the greater included the lesser.

█ The prosecution was not required to elect upon which count it would contend for a conviction. The defendant was convicted upon both counts, and there is no question of his guilt of the greater. His admissions in court in effect amounted to a plea of guilty. The submission of the question of his guilt upon the count charging an attempt to murder could not have, under the state of the record, prejudiced the jury in its consideration of the crime which, by his own admissions, he committed.

No other serious questions are presented by the appeal. It is ordered that the judgment pronounced on count two of the information, which adjudged defendant guilty of the malicious use of explosives, be and it is hereby affirmed; the judgment pronounced upon count one, which charged an attempt to commit murder, is set aside and vacated, and the trial court is directed to dismiss the count upon which said conviction was had.

It is so ordered.

Waste, C. J., Curtis, J., Preston, J., and Langdon, J., concurred.