[No. B087289. Second Dist., Div. One. Nov. 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ERICK L. WOMACK, Defendant and Appellant.

## COUNSEL

Susan Pochter Stone, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Robert W. Ottinger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### SPENCER, P. J.—

#### INTRODUCTION

Defendant Erick L. Womack appeals from a judgment of conviction entered after a jury found him guilty of willful, deliberate and premeditated attempted murder (Pen. Code, §§ 187, subd. (a), 664), in the course of which he used a deadly weapon (*id.*, § 12022, subd. (b)), and attempting to induce a witness to give false or to withhold true testimony (*id.*, § 137, subd. (b)). Thereafter, defendant was sentenced to state prison for the term prescribed by law.

#### STATEMENT OF FACTS

Thomas Sembower (Sembower), a witness assisting in the prosecution of Robert Foster (Foster), had been placed in protective custody at the Concord

Hotel in El Segundo. Sembower left the hotel on foot on the evening of March 5, 1994. As he stepped out onto the sidewalk, defendant came up behind him, placed a rope around his neck, pulled it tight and brought Sembower down to the ground. Sembower managed to get his hands on the rope, but another individual jumped on his legs. This individual ripped open Sembower's jacket and T-shirt. He then drew a knife and began slicing Sembower's chest. As he did so, he told Sembower he should have been loyal to Foster; he should have kept his mouth shut. Defendant said, "You should have left it alone." A third person hissed, "car"; defendant twisted the rope one last time, as the individual with the knife slashed at Sembower's throat, cutting through his right cheek instead. Defendant and the other individual then fled. As they did so, defendant expressed frustration and rage that Sembower was not yet dead.

*Defense*

Defendant spent some time at the Teen Canteen, where he met Sembower. The two were cordial, but were not friends. Defendant had seen Foster at the Teen Canteen, but did not know him. Defendant was not in El Segundo on the night of March 5, 1994. He was in Hollywood with friends. He did not attack Sembower.

*Rebuttal*

El Segundo Police Officer Craig Clearly interviewed defendant in connection with the Foster case and the instant matter. Defendant stated that he knew Foster.

CONTENTION

Defendant contends the verdicts finding him guilty of attempted murder and of inducing or attempting to induce a witness to give false or to withhold true testimony are inconsistent, and the latter verdict is unsupported by the evidence. For the reasons set forth below, we agree.

DISCUSSION

■ Attempted murder requires a specific intent to kill. (*People* v. *Ramos* (1982) 30 Cal.3d 553, 583 [180 Cal.Rptr. 266, 639 P.2d 908].) ■ The felony of attempting "by force or threat of force . . . to induce any person to give false testimony or withhold true testimony" requires that the force or threat of force be used with the specific intent of inducing a witness to give false or withhold true testimony (Pen. Code, § 137, subd. (b); cf. *People* v.

*Brenner* (1992) 5 Cal.App.4th 335, 339 [7 Cal.Rptr.2d 260]). By contrast, the felony of using force or threat to prevent or dissuade or attempt to prevent or dissuade a witness from testifying (Pen. Code, § 136.1, subd. (c)(1)) requires the specific intent to keep the witness from *giving* any testimony (*Brenner, supra*, at p. 339). ▮ Defendant argues that a specific intent to kill is consistent with an intent to prevent a witness from giving testimony altogether, but inconsistent with an intent to induce that witness to give false or withhold true testimony.

▮ As noted in *Beaty* v. *Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 902 [231 Cal.Rptr. 128], "[t]he fundamental rule of statutory construction is ascertaining the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] The court looks first to the language of the statute, attempting to give effect to the usual, ordinary import of that language and seeking to avoid making any language mere surplusage. Significance if possible should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.] The various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citation.] The provisions must be given a reasonable and common-sense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]"

▮ Penal Code section 137 is entitled "Influencing testimony or information given to a law enforcement official." Subdivision (a) punishes any "person who gives or offers, or promises to give, to any witness, person about to be called as a witness, or person about to give material information pertaining to a crime to a law enforcement official, any bribe, upon any understanding or agreement that the testimony of such witness or information given by such person shall be thereby *influenced*." (Italics added.) Subdivision (b) punishes "attempts by force or threat of force or by the use of fraud *to induce any person to give false testimony or withhold true testimony or to give false material information pertaining to a crime to, or withhold true material information pertaining to a crime* from, a law enforcement official." (Italics added.) Subdivision (c) punishes "knowingly induc-[ing] another person *to give false testimony or withhold true testimony . . . or to give false material information pertaining to a crime to, or to withhold true material information pertaining to a crime* from, a law enforcement official." (Italics added.)

The entire sense of Penal Code section 137 is that testimony will be given, but the perpetrator will attempt to *influence* the testimony given. This is clear

from a comparison of the language of sections 136.1 and 138. Section 138 punishes anyone "who gives or offers or promises to give to any witness or person about to be called as a witness, any bribe *upon any understanding or agreement that the person shall not attend upon any trial or other judicial proceeding*, or . . . who *attempts* by means of any offer of a bribe *to dissuade any person from attending upon any trial or other judicial proceeding*." (Italics added.) Section 136.1 punishes anyone who "[k]nowingly and maliciously *prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law*" or from attempting to do so. (Italics added.) These sections clearly contemplate that the perpetrator will prevent or dissuade a prospective witness from *giving* testimony, or will attempt to do so. Preventing or dissuading a witness from testifying altogether is incompatible with influencing or shaping the testimony the witness gives.

To interpret these sections of part I, title 7, chapter 6 of the Penal Code, "Falsifying Evidence, and Bribing, Influencing, Intimidating or Threatening Witnesses," in any other fashion is to render sections 136.1 and 138 redundant. If preventing or dissuading a witness from testifying is included in inducing a witness to withhold true testimony, as the People argue, then sections 136.1 and 138 are surplusage. Adopting this construction of section 137 would be repugnant to all rules of statutory construction. (*Beaty v. Imperial Irrigation Dist., supra*, 186 Cal.App.3d at p. 902.)

Adopting a construction which gives effect to all of these statutes, however, by limiting the operation of Penal Code section 137 to those instances where a defendant attempts to influence the nature of the testimony a witness gives and confiding to Penal Code sections 136.1 and 138 those instances where a defendant prevents or dissuades a witness from giving *any* testimony, will not lead to an absurd result, as the People argue. Those who attempt to kill a witness will not merit less punishment than those who threaten or apply lesser force. Sections 136.1 and 137 both impose the same punishment for using threat or force. The distinction lies in the defendant's aim. It is simply a matter of charging and prosecuting a defendant under the appropriate statute. Moreover, willful, deliberate and premeditated attempted murder carries a far steeper sentence, life imprisonment, than do sections 136.1 and 137, each of which carries a maximum term of four years.

Inasmuch as Penal Code section 137 cannot reasonably be interpreted as encompassing an intent to prevent or dissuade a witness from testifying, an intent to kill the witness is not coextensive with an intent to influence the testimony of that witness by inducing him or her to give false or withhold true testimony. Indeed, the two intents are mutually exclusive. One cannot

influence, or shape, the testimony of a witness by preventing that witness from testifying.

In this respect, the instant matter is reminiscent of *People* v. *Koehn* (1929) 207 Cal. 605 [279 P. 646]. In *Koehn*, the defendant had placed explosives at the door of a judge's house. (At p. 608.) The judge was hearing a civil matter in which the defendant was a party. (*Id.* at p. 610.) The defendant was charged with and convicted of attempted murder and the malicious use of explosives with the intent to injure, intimidate and terrify a judge. (*Id.* at pp. 606-607.) The defendant admitted depositing the bomb at the judge's doorstep with the intent of getting the judge to rule in his favor in the pending civil matter. He denied any intent to injure the judge. (*Id.* at p. 611.) The Supreme Court noted the inconsistency between the jury's conclusion defendant acted with the intent to kill and its conclusion he acted with the intent to intimidate and influence the judge, an intent he admitted harboring. The court therefore held that, "from the nature of the two offenses charged, [the defendant] could not be guilty of both." (*Id.* at p. 609.) Inasmuch as defendant had admitted all elements of the more serious malicious-use charge, the court reversed the attempted murder conviction. (*Id.* at p. 613.)

In *People* v. *Kynette* (1940) 15 Cal.2d 731 [104 P.2d 794], the Supreme Court distinguished the case on its facts. The critical distinction lay in the nature of the malicious-use offense: it punished not only an attempt to intimidate and influence a government official, but also an attempt to *injure* the official. In *Koehn*, the defendant had admitted intending to intimidate and influence the judge. That intent was incompatible with an intent to kill, for the death of the victim would have "frustrated [the defendant's] effort to procure a favorable decision" from the judge "by the malicious use of explosives." (At p. 760.) The defendant in *Kynette*, however, had not admitted harboring any particular intent. While there is a repugnancy between an intent to kill and an intent to intimidate, "[t]here is no repugnancy between an intent to kill the victim and an intent to *injure* him." (*Id.* at pp. 760-761, italics added.)

In *Koehn*, the bomb did not explode. In *Kynette*, prior to the nearly fatal explosion of a bomb in an automobile, the victim had participated in administrative proceedings that threatened the future of the Los Angeles Police Department Special Intelligence Unit the defendant headed. The defendant had warned the victim that his continued participation in the proceedings would result in a bombing. (*People* v. *Kynette, supra*, 15 Cal.2d at pp. 738-739.) The warning and the near-fatal nature of the subsequent bombing supported an inference the defendant used explosives maliciously with the intent of injuring the victim, rather than intimidating and influencing him. This intent was compatible with an intent to kill, for one necessarily intends to injure when one attempts to kill. (*Id.* at p. 761.)

This case resembles *Kynette*, in that there is no evidence the defendant harbored any intent other than the intent to kill, an intent necessarily encompassing the intent to injure. In contrast to *Kynette* and *Koehn*, however, Penal Code section 137 does not punish an intent to injure, but only an intent to influence a witness's testimony by inducing that witness to give false or withhold true testimony. The intent to influence testimony is incompatible with the intent to kill.

To be sure, defendant could have harbored dual intents. He could have intended to kill Sembower and, secondarily, intended to influence Sembower's testimony should the attempt to kill him fail. There is no evidence defendant harbored dual intents, however.

When Sembower left the hotel in which he had been placed as a protected material witness, defendant placed a rope around his neck and jerked it, forcing Sembower to the ground. Defendant was strangling Sembower, who could breathe somewhat only because he managed to get his hands on the rope. Once Sembower was on the ground, defendant's accomplice sat on Sembower's legs, ripped open his jacket and T-shirt and began slicing Sembower's chest. As he did so, the accomplice said that Sembower should have been loyal to Foster, the person against whom Sembower was scheduled to testify; he should have kept his mouth shut. Defendant said Sembower "should have left it alone." The accomplice did not say that Sembower should *be* loyal, that he should *keep* his mouth shut in the future; he said he should have done those things in the past. Similarly, defendant did not say that Sembower should *leave* it alone in the future, but that he should have left it alone in the past. The clear import of the accomplice's and defendant's statements is that Sembower now would pay the ultimate price for his disloyalty.

Defendant continued to strangle Sembower as his accomplice sliced Sembower's chest and delivered the message. He exerted sufficient pressure on Sembower's throat to leave a deep ligature mark on his neck.

Another accomplice suddenly hissed, "car"; defendant twisted the rope one last time as the primary accomplice slashed at Sembower's throat, hitting and cutting through his right cheek instead. Sembower's tormentors then fled. As they did so, defendant expressed rage and frustration that Sembower was not yet dead.

On these facts, it would be pure speculation to conclude that defendant had a "backup plan," harboring a secondary intent to influence Sembower's testimony. Given the dearth of evidence supporting that theory, we conclude

that the verdicts are inconsistent. We have found no authority for the proposition that this court can modify the judgment to find defendant guilty of an offense with which he was not charged, violation of Penal Code section 136.1, subdivision (c)(1). Accordingly, it appears the judgment must be modified to strike defendant's conviction of violating section 137, subdivision (b).

The judgment is modified to strike defendant's conviction of violating Penal Code section 137, subdivision (b). In all other respects, the judgment is affirmed.[1]

Vogel (Miriam A.), J., and Masterson, J., concurred.

---

[1]The modification has little practical effect. Defendant received a life sentence on his conviction of willful, deliberate and premeditated attempted murder. We do nothing more than eliminate the additional three-year sentence imposed for defendant's conviction of inducing a witness to withhold true testimony, a sentence the trial court had stayed.