Filed 1/9/14  P. v. Roberts CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E054912 |
| v. | (Super.Ct.No. SWF10002456) |
| DOUGLAS FRANKLIN ROBERTS II, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Petersen, Judge. Reversed in part; affirmed in part.

Helen S. Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael T. Murphy and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Douglas Franklin Roberts II appeals his conviction for attempted taking of a vehicle (Veh. Code, § 10851, subd. (a); Pen. Code, § 664) and intimidating a witness by force or threat (Pen. Code, § 136.1, subds. (b), (c)).[1] He contends that there was insufficient evidence to support the witness intimidation count, that Penal Code section 136.1 is unconstitutional, and that he is entitled to additional pretrial custody credits.

We agree that the evidence does not support the conviction for witness intimidation. Because we will reverse the conviction on that basis, we need not address defendant's constitutional challenge to section 136.1. (*People v. Reyes* (1998) 19 Cal.4th 743, 767 [court does not reach constitutional questions unless absolutely required to do so to dispose of the matter before it].)[2]

## PROCEDURAL HISTORY

Defendant was charged with intimidating a witness (count 1; Pen. Code, § 136.1, subd. (c)(1)); attempted taking of a vehicle (count 2; Veh. Code, § 10851, subd, (a); Pen. Code, § 664); and criminal threats (count 3; Pen. Code, § 422). The information alleged that in committing count 1 defendant acted maliciously and threatened to use force or violence as defined by Penal Code section 136.1, subdivision (c). It also alleged that defendant had served three prior prison terms (Pen. Code, § 667.5, subd. (b)), one prior

---

[1] All further statutory citations refer to the Penal Code unless another code is specified.

[2] Because we do not reach the constitutional issue, the Attorney General's motion for judicial notice of legislative history materials pertaining to her contention that the statute is constitutional is moot. The motion is denied.

strike conviction (Pen. Code, §§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)), and one prior serious felony conviction (Pen. Code, § 667, subd. (a)).

A jury convicted defendant on counts 1 and 2 and acquitted him on count 3. It found true a separate allegation that defendant threatened to use force or violence in the commission of count 1. In a separate proceeding, defendant admitted the prior prison term and prior conviction allegations. The court imposed a total term of 15 years eight months, consisting of the upper term of four years on count 1, doubled; a consecutive term of four months on count 2, doubled; five years for the prior serious felony enhancement; and two one-year terms for the prior prison term enhancements. The court struck the remaining prior prison term enhancement.

Defendant filed a timely notice of appeal.

## FACTS

Defendant met Alicia Bailey on Halloween in 2010. They dated for the next two weeks. Defendant did not move in with Bailey, but he stayed overnight two or three times. Their relationship was volatile, and they argued frequently. There was no violence, however, and defendant never threatened to harm Bailey.

Bailey owned a car; defendant did not. During their brief relationship, Bailey sometimes allowed defendant to borrow her car, and she generally had him drive if they went somewhere together. Both of their driver's licenses had been suspended, and the one time defendant was stopped by police while driving Bailey's car alone, the car was impounded because of his outstanding traffic tickets. Bailey had to pay $500 to have her

3

car released.  She was not angry about it, but limited defendant's use of the car after that to avoid having it impounded again.

On November 15, 2010, defendant took Bailey's car without her permission. Bailey was angry about it.  She called defendant's ex-girlfriend and asked her to tell defendant to return her car.  Defendant returned the car to Bailey's house sometime during the day on November 16.

As penance, defendant helped Bailey clean her house.  They began to argue when defendant said he wanted to take Bailey's car again.  Bailey refused to let him take it, and defendant insisted that he was going to take it.  Bailey offered to drive him wherever it was he wanted to go, but defendant insisted on taking the car himself.  Bailey told him to get out of her house.  The argument continued, and eventually Bailey said, "Get out of my house or I'm going to call the police.  You need to leave.  I'm going to call the police."  She also testified that she said she would call the police if defendant took her car.  Defendant responded, "Call the police, I'll slit your throat."  At the time, Bailey was in the living room and defendant was sitting on the bed in Bailey's bedroom.

Bailey immediately left the house and went to her neighbor's house.  Her oldest child went with her; the two younger children were asleep, and although Bailey was afraid that defendant would harm her, she did not think he would harm the children.[3]

Immediately after she arrived at the neighbor's house, Bailey attempted to call a police officer she knew.  She did not reach him.  About 10 minutes after she arrived

---

[3]  Her children were seven, five and three years old.

4

there, defendant came to the door. He yelled at her from the front door and threatened to beat her unless she came home. Bailey asked the neighbor to go get her two younger children. The neighbor did so, and when he returned, he told Bailey that defendant was outside in her car. Bailey went outside and told defendant to get out of her car or she would call the police. Defendant refused, saying, "[F]uck you. Do what you have to do." He did not make any threats or try to restrain Bailey. Bailey went back to the neighbor's house and called 911.

Deputy McDonough responded to the 911 dispatch. He saw defendant in the front seat of a vehicle "fidgeting." As McDonough approached the car, he saw something fly into the backseat. Defendant was uncooperative and had to be physically removed from the car. Once he was removed, McDonough observed that the steering column was partially disassembled and that a shaved key had been inserted into the ignition. McDonough found a hammer in the backseat. He testified that an average man would not be able to turn the shaved key to start the car and that the hammer would be used to hit the key to turn it and engage the engine.

Defendant conceded the charge of attempted unlawful taking of a vehicle.

DISCUSSION

1.

THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE

CONVICTION ON COUNT 1

In count 1, defendant was charged with attempting to dissuade a witness from reporting a suspected crime in violation of section 136.1, subdivision (c)(1).[4] Defendant contends that the evidence is insufficient to support his conviction on count 1 because no crime had been committed at the time defendant threatened to slit Bailey's throat if she called the police. The Attorney General responds that Bailey was a victim of the crime of attempted auto theft at the time defendant made the threat. We agree with defendant.[5]

---

[4] The offense is defined in section 136.1, subdivision (b). Subdivision (c)(1) makes the offense a felony if it is committed "knowingly and maliciously" and the act was "accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person." Subdivision (d) provides that the crime is committed even if the defendant did not succeed in dissuading the witness or victim from reporting the crime.

[5] The parties agree that review is under the substantial evidence rule, pursuant to which we must affirm the conviction if there is any substantial evidence which rationally supports the verdict on the witness intimidation count. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) However, defendant's contention is, in reality, that the undisputed evidence is insufficient as a matter of law because there is no evidence that any crime had been committed when defendant issued his threat. This is a question of law which we review de novo. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 316, fn. 3 [Fourth Dist., Div. Two].)

6

Section 136.1 is part of "a detailed and comprehensive statutory scheme for penalizing the falsification of evidence and efforts to bribe, influence, intimidate or threaten witnesses [and victims]." (*People v. Fernandez* (2003) 106 Cal.App.4th 943, 948.) Section 136 defines "witness" as "any natural person, (i) having knowledge of the existence or nonexistence of facts relating to any crime . . . ." It defines "victim" as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated." Section 136.1, subdivision (b) provides: "Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is a witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge." The language of these statutes unambiguously reflects the Legislature's intent that these statutes apply only where a crime has actually been committed or is in progress, or where a crime has been or is being attempted at the time the defendant attempts to dissuade the victim or witness from reporting it to law enforcement. Moreover, section 136.1 requires the specific intent to dissuade a victim or witness from testifying or reporting a crime. (*People v. Brenner* (1992) 5 Cal.App.4th 335, 339; *People v. Womack* (1995) 40 Cal.App.4th 926, 929-930.)

The Attorney General does not contend otherwise. However, she is in error when she asserts that the crime of unlawful taking "was 'being'" committed against Bailey when defendant threatened her because "he had already announced his intent to take her car." A threat to take the car without permission does not constitute an unlawful taking, nor even an attempted unlawful taking. An attempt requires a direct but ineffectual step, going beyond mere preparation, toward the commission of the crime. (§ 21a; *People v. Kipp* (1998) 18 Cal.4th 349, 376-377 [solicitation of a sexual act accompanied by acts of forcible coercion constitutes attempt].) An attempt is "a direct movement toward the commission of the crime," going so far that the defendant's acts "would result in the accomplishment of the crime unless frustrated by extraneous circumstances." (*People v. Memro* (1985) 38 Cal.3d 658, 698, overruled on an unrelated point in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.) Merely issuing a verbal threat to take someone's property does not constitute a direct but ineffectual step toward actually taking it.

As a fallback position, the Attorney General contends that Bailey was a victim of a crime when defendant threatened her because he had stolen her car the day before. However, there is no evidence that Bailey threatened to report that incident to the police. According to Bailey, she told him either that she would call the police if he did not leave her house or that she would call the police if he took her car, or perhaps both. She made no reference to reporting the previous day's incident. Accordingly, the evidence does not support the inference the Attorney General urges, i.e., that defendant understood that Bailey was threatening to report the previous day's incident and that he intended to dissuade her from doing so. Consequently, this argument fails as well.

8

2.

CONDUCT CREDITS

Defendant contends that he is entitled to additional presentence conduct credits, based on the amendment to section 4019 which became effective on October 1, 2011. Neither the language of the statute nor equal protection principles support defendant's contention.

Section 4019 is explicitly prospective, applying only to defendants whose crimes were committed on or after the operative date of the statute: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).) Defendant, however, contends that the final sentence of subdivision (h) reflects a legislative intent that a defendant whose presentence custody straddles the effective date of the amended statute is entitled to credits at the higher rate beginning on October 1, 2011. This issue was extensively addressed in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 51-52. We agree with that court's reasoning, and we adopt it.

Defendant's contention that prospective-only application of the current version of section 4019 violates equal protection principles has also been addressed and rejected in *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1550-1554. (See also *People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9.) Again, we concur with that court's analysis.

9

The conviction on count 1 is reversed, and the superior court is directed to enter a verdict of not guilty on that count.[6]  The cause is remanded for resentencing.  The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

RICHLI
J.

MILLER
J.

---

[6]  Because we have reversed the conviction on count 1 based on the insufficiency of the evidence, defendant may not be retried on count 1.  (*Burks v. United States* (1978) 437 U.S. 1, 11; *People v. Hatch* (2000) 22 Cal.4th 260, 272.)