Filed 10/30/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>                    v.<br><br>OCTAVIO JOSEPH REYES,<br><br>        Defendant and Respondent. | A158095<br><br>(Solano County<br>Super. Ct. No. FCR341076) |

An information charged Octavio Joseph Reyes, a deputy public defender who began practicing law less than three years ago, with two counts of witness tampering—first, for violation of Penal Code[1] section 136.1, subdivision (b)(1), which proscribes an attempt to dissuade any victim of or witness to a crime from reporting "that victimization" to law enforcement, and, second, for violation of section 137, subdivision (b), which proscribes the attempted inducement of any person "by the use of fraud" to "withhold" "true material information pertaining to a crime" from law enforcement.

The superior court granted Reyes's motion to set aside the information under section 995. The People appeal, arguing they presented sufficient evidence at the preliminary hearing to establish probable cause to believe

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III of the main opinion addressing certain matters for consideration by the parties on remand.

[1] Undesignated statutory references are to the Penal Code.

1

that Reyes committed the charged offenses.  Reyes defends the order of dismissal, contending (1) his alleged conduct does not constitute a crime under the statutory provisions at issue, and (2) prosecuting him for a violation of these two statutes violates his due process rights.

The dismissal order presents close questions of statutory interpretation as to both counts.  We resolve these questions as follows:

First, we shall affirm the dismissal of the section 136.1, subdivision (b)(1) count.  The core issue there is whether, to constitute dissuasion covered by the statute, the suppressed report of "victimization" must be of a past, completed crime, as Reyes argues, or, as the People argue, may be either a past crime or an ongoing course of criminal conduct expected to continue into the future.  Because neither the statutory text, the structure of the statute, nor the legislative history supplies a definitive answer, we conclude that this is one of those rare cases where competing interpretations of a criminal statute stand in relative equipoise, so we resolve the ambiguity in Reyes's favor under the rule of lenity.

Second, we shall reverse the dismissal of the section 137, subdivision (b) count.  Section 137, subdivision (b), in plain terms, unlike section 136.1, subdivision (b)(1), has no language requiring, even arguably, that the withholding of testimony or information to which it is directed must involve a past crime.  All it requires is that the attempt to induce the withholding must be made "by the use of fraud," which is indisputably alleged here.  Reyes cites a line of Court of Appeal cases that he argues support construing section 137, subdivision (b), to apply only to the influencing of testimony or information provided to law enforcement—in short, tampering with the substance of testimony or information—not to the withholding of testimony or information altogether.  We are not persuaded

2

that these cases are controlling.  The most significant precedent is a California Supreme Court case, *People v. Pic'l* (1982) 31 Cal.3d 731 (*Pic'l*), which squarely rejects the view that section 137 applies only to attempts to influence the substance of testimony or the substance of reported information.  We are bound to follow *Pic'l*.

## I.  BACKGROUND

### A. *The Complaint Alleging Violation of Section 136.1, Subdivision (b)(1)*

A felony complaint filed in October 2018 charged Reyes with one felony count of attempting to dissuade a witness from reporting a crime in violation of section 136.1, subdivision (b)(1).  The complaint alleged that Reyes committed the offense "[o]n or about July 3, 2018."

### B. *The Evidence Presented at the Preliminary Hearing*

#### 1.  Stipulated Facts

At the outset of the preliminary hearing on January 29, 2019, the parties submitted a written stipulation agreeing on certain background facts. The court admitted the stipulation into evidence.  Although the parties have not provided a copy of the stipulation to this court, we glean the following from it, based on the summary in Reyes's appellate brief:

"1.  Mr. Reyes served as a Solano County Public Defender, and represented defendant Jacques Olivas in connection with several cases, including case number FCR337942.

"2.  Mr. Reyes appeared as counsel of record for Mr. Olivas at court hearings in case number FCR337942 on June 6, June 8, June 13, and July 3, 2018.

"3.  On June 13, 2018, Mr. Olivas resolved case number FCR337942 with a nolo contendere plea to a violation of Penal Code [section] 148[,] [subdivision ](a)(1).  As a condition of probation, the Court imposed an order

pursuant to which Mr. Olivas was ordered not to annoy, harass or threaten his mother, Evelyn Olivas, and not to have any uninvited contact with Evelyn Olivas.

"4. On June 26, 2018, the Solano County District Attorney's Office filed new charges against Mr. Olivas in case number FCR338569. On the same date, in case number FCR337942, the District Attorney's Office alleged that Mr. Olivas had violated the terms of his probation.

"5. On July 3, 2018, the new charges and the alleged probation violation were resolved. The charges in case number FCR338569 were dismissed. In case number FCR337942, the Court reinstated Mr. Olivas's probation, but with a new and revised protective order. Under the July 3, 2018 protective order, Mr. Olivas was required to stay 100 yards away from Evelyn Olivas and to stay away from her home. Mr. Olivas was further prohibited from having any 'personal, electronic, telephonic, or written contact' with Evelyn Olivas, and prohibited from having contact with Ms. Olivas 'through a third party, except an attorney of record.'

"6. After the resolution entered on July 3, 2018, Mr. Olivas had no pending criminal charges until August 28, 2018, at which time the District Attorney's office brought further criminal charges against Mr. Olivas."

## 2. Witness Testimony

In addition to the above stipulated facts, the record at the preliminary examination included testimony from the following witnesses, who testified as follows.

Vacaville Police Officer Julie Bailey testified she arrested Jacques Olivas on May 30, 2018. On that day, Officer Bailey and other officers responded to Evelyn Olivas's residence in Vacaville. Evelyn Olivas reported

4

that her son had assaulted her, and after a chase and a struggle, the officers arrested Jacques Olivas.[2]

Jerry Sanchez, an investigator with the Solano County District Attorney's Office, testified that he interviewed Evelyn. Evelyn told Sanchez that on July 3, 2018, she received a call on her cell phone from Reyes. Ms. Olivas stated that Reyes identified himself as "Jacques's district attorney." Reyes provided his email address and telephone number. Evelyn made notes on the back of an envelope about what Reyes told her. Evelyn stated that, on the July 3 phone call, Reyes told her that Jacques was going to be released that day. Evelyn stated that Reyes told her that "if [Jacques] was near her home or at her home, not to call the police" and instead "to call [Reyes]."

On July 11, 2018, Evelyn sent Reyes an email, attaching a letter to Jacques.[3] Reyes responded to the email, saying he would "review these documents and get back to you," and asking for the phone number of Darla Estes, who is Jacques's former girlfriend and has a child in common with him. Evelyn responded with an email providing Estes's phone number to Reyes.

Sanchez interviewed Estes, who stated that she spoke with Reyes by phone on July 11, 2018. According to Sanchez, Estes said Reyes "told her to

---

[2] We will sometimes refer to Evelyn Olivas and Jacques Olivas by their first names, for purposes of clarity. No disrespect is intended.

[3] The exhibits admitted into evidence at the preliminary hearing included emails, letters, other documents, and an audio recording, some of which Sanchez also described during his testimony. The exhibits have not been provided to this court. To the extent we discuss the exhibits, our descriptions are based on Sanchez's testimony about them.

tell Evelyn not to call the police if the restraining order was violated, to call him."

On July 12, 2018, Evelyn sent Reyes another email, again attaching a letter. The email was addressed to "Mr. Reyes," but attached a letter addressed to "Joseph Reyes, district attorney." Reyes did not respond to the July 12 email. On cross-examination at the preliminary hearing, investigator Sanchez testified he found no evidence that Reyes read the July 12 email or the letter attached to it. On redirect, Sanchez testified he could tell that Reyes read some of his emails because he responded to one of the emails that Evelyn sent him. Sanchez said it also appeared that Reyes read the email Evelyn sent him with Estes's phone number, because Reyes then contacted Estes.

Officer Bailey testified she responded to an incident at Evelyn's home shortly after midnight on the night of August 25–26, 2018. Officer Bailey testified that Evelyn "called the police department to report that her son Jacques was attempting to get into her mobile home and that she had a restraining order against him, a domestic violence restraining order." Officer Bailey and her partner again arrested Jacques after another struggle. After the arrest, Officer Bailey spoke with Evelyn. In this interview shortly after Jacques's arrest, Evelyn said that, on August 24, 2018, the manager of her trailer park had called to tell her that Jacques had been "lingering in the trailer park that day."[4]

What precipitated the investigation of Reyes for possible witness tampering was that, in her interview with Officer Bailey in the early morning

---

[4] In response to a double hearsay objection by the defense, the magistrate ruled this portion of Evelyn's statement to Officer Bailey (relaying what the park manager told Evelyn) was admissible for the limited purpose of explaining Evelyn's conduct.

6

hours of August 26, Evelyn told Officer Bailey she had not called the police on August 24 because "the district attorney had told her not to call the police if [Jacques] violated the restraining order, but to call him instead." Evelyn similarly told investigator Sanchez that she did not call the police on August 24 because Reyes had instructed her not to do so. She instead tried calling Reyes but was unable to reach him. Later on August 26, 2018, Evelyn sent Reyes another email, again attaching a letter. The email was addressed to "Mr. Reyes." The letter was addressed to "Joseph Reyes, district attorney." Reyes apparently did not respond to the August 26 email. Again, investigator Sanchez testified he found no evidence that Reyes read the August 26 email or the letter attached to it, but noted he could determine Reyes read some of his email because he responded to one of the emails Evelyn sent him.

The defense sought to impeach Evelyn by eliciting testimony from Sanchez that Evelyn had made false statements to the police, including in an incident in September 2018 when she initially told the police Jacques was in her home without her permission but later stated she had given him permission. And according to testimony elicited from Sanchez on cross-examination, Evelyn sent a letter to the prosecutor in the present case in which she blamed Reyes in part for exacerbating her son Jacques's legal troubles.[5] In the cross-examination of Sanchez, the defense also confirmed that, when Reyes contacted Estes, he specifically identified himself to her as a deputy public defender.

---

[5] According to the defense, Evelyn bore a grudge against Reyes for, in her view, putting Jacques at risk of new felony charges, including potentially three strikes exposure.

7

As part of his investigation, Sanchez spoke briefly with Reyes in a courtroom hallway. Reyes wanted to speak with his supervisor before proceeding with an interview. Rather than take that as the typical reticence of a junior deputy defender to speak with an investigator for the district attorney's office without first consulting a more experienced colleague, Sanchez began to consider Reyes a "suspect" at that point because he "refused to answer" when Sanchez asked him whether Evelyn had sent him "any correspondence as a deputy district attorney." But when Sanchez asked Reyes directly whether he had presented himself as a district attorney, Reyes denied having done so.

### C. *By Information, the People Add a Charge of Violating Section 137, Subdivision (b)*

On the above evidentiary showing, the magistrate determined there was probable cause to bind Reyes over for trial on the charge of violating section 136.1, subdivision (b)(1). After he denied without prejudice Reyes's motion under section 17, subdivision (b)(5), to reduce the charge to a misdemeanor, the People filed an information realleging the original charge and adding a new felony charge under section 137, subdivision (b).

Count 1 of the information alleged that "[o]n or about and between July 3, 2018 and August 26, 2018," Reyes attempted to dissuade a victim or witness from reporting a crime in violation of section 136.1, subdivision (b)(1). Count 2 alleged that, "[o]n or about and between July 3, 2018 and July 11, 2018," Reyes "attempt[ed] by the use of fraud to get E.O., a witness to withhold information from law enforcement" in violation of section 137, subdivision (b).

### D. *The Motion To Set Aside the Information*

The defense filed a motion to set aside the information pursuant to section 995, and the parties briefed the motion. The defense argued that

sections 136.1, subdivision (b)(1), and 137, subdivision (b), properly construed, do not apply to the conduct alleged by the prosecution, and therefore the charges are not supported by probable cause. In their opposition brief, the People argued that (1) section 136.1, subdivision (b)(1), is not limited to dissuasion of the reporting of past crimes, and (2) Reyes violated section 137, subdivision (b), because he used fraud with the intent to induce Evelyn to withhold information from the police.

The superior court granted the section 995 motion as to both counts. The court's ruling is reflected in a minute order (which does not describe the court's reasoning) and in its oral comments on the record. The court stated: "I believe the 995 motion is well taken. And I think the issues that have been argued by the defense are well taken." The court concluded the statutes at issue did not apply to the conduct alleged by the People. As to the section 136.1, subdivision (b)(1) charge in count 1, the court agreed with the defense position that the language of the statute requires that the defendant attempt to dissuade the reporting of a past crime.

Turning to the section 137, subdivision (b) charge in count 2, the court gave less explanation, appearing to conclude that charge failed for the same reason as count 1. The court stated that its holding as to count 1 "would apply then to count 2 also. And in that case, the question with the 137, I don't believe the evidence supports that charge either because you have basically the same evidence and with that ruling."

Finally, the superior court agreed with the defense's due process notice argument, although the court again appeared to link that ruling to its holding as to the proper interpretation of section 136.1, subdivision (b)(1), i.e., that the defendant must have sought to dissuade the reporting of a past crime. The court stated: "Again, to go further, just so that this can be

9

addressed, regarding the construction of the statute and then we had the argument of notice to one who's accused of a—one who's about to commit a crime to have notice. I think that argument makes sense *if you make the finding that I've made that you have to have the crime committed before the words and actions in our case*." (Italics added.)

The People appealed.[6]

## II. DISCUSSION

Throughout the proceedings below, before the magistrate, as well as before the superior court, the defense was emphatic that Reyes firmly denies he ever tried to prevent Evelyn from calling the police or that he ever impersonated a district attorney. What happened here, as summed up by the defense in the hearing before the magistrate, is that because the protective order prevented any direct contact between Evelyn and Jacques, "Mr. Reyes told Ms. Olivas not to contact her son, otherwise the police could get involved because that would be a violation of a protective order, and instead to communicate through him, counsel of record." We acknowledge this denial—repeated again here on appeal, in the responding brief and at oral argument—and we begin by saying that nothing in this opinion should be read to presuppose the truth of the People's allegations. We address only the

---

[6] Reyes filed a motion to strike the People's appellate reply brief for having been filed one day after the due date specified in the California Rules of Court. In support of the motion, Reyes filed a request that this court take judicial notice that (1) Reyes filed his respondent's brief on October 24, 2019, and (2) the People filed their reply brief on November 14, 2019 (i.e., 21 days later). (See Cal. Rules of Court, rule 8.360(c)(3) ["The appellant must serve and file a reply brief, if any, within 20 days after the respondent files its brief."].) The request for judicial notice is granted. The motion to strike is denied.

legal sufficiency of the charges in the information on the showing that the People made at the preliminary hearing.

## A. *Legal Standards*

Section 995 provides that the superior court shall set aside an information if the defendant was "committed without reasonable or probable cause." (*Id.*, subd. (a)(2)(B).) " '[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate . . . .' [Citations.] 'Insofar as the Penal Code section 995 motion rests on issues of statutory interpretation, our review is de novo.' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

" ' " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' [Citation.] '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' " (*People v. Gonzalez, supra,* 2 Cal.5th at p. 1141.) "If the language of a statutory provision remains unclear after we consider its terms, structure, and related statutory provisions, we may take account of extrinsic sources—such as legislative history—to assist us in discerning the relevant legislative purpose." (*Gund v. County of Trinity* (2020) 10 Cal.5th 503, 511; see *People v. Valencia* (2017) 3 Cal.5th 347, 357–360.)

11

**B.** *Count 1:  Violation of Section 136.1, Subdivision (b)(1)*

Among the overlapping statutes in Part I, Title 7, Chapter 6 of the Penal Code (§§ 132–141), a statutory scheme titled "Falsifying Evidence, and Bribing, Influencing, Intimidating or Threatening Witnesses," is section 136.1.

Subdivision (b) of section 136.1 provides in part:  "Except as provided in subdivision (c) [addressing more serious attempts to prevent or dissuade punishable as felonies], every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense . . . : [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."  Violation of section 136.1, subdivision (b), is a wobbler, chargeable as a misdemeanor or a felony. (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.)  It was charged here as a felony.  To show a defendant has violated section 136.1, subdivision (b)(1), the People must prove "(1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials."  (*Upsher*, *supra*, at p. 1320.)

The issue before us is whether section 136.1, subdivision (b)(1), should be construed to apply only to dissuasion of reports about completed crimes, as Reyes contends (and the superior court ruled), or should be construed more broadly to encompass future crimes as well, as the People contend (and the magistrate ruled).  We begin, of course, with the statutory text, since " 'the text [is] the first and best indicator of intent.' "  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321.)  "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in

context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735, citing *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.)

Based on the text and structure of the statute, there are reasonable arguments going both ways.

According to the People, the statute on its face proscribes attempts to dissuade a "victim" or a "witness" from reporting (§ 136.1, subd. (b)), and as applied to the evidence here Evelyn was both. For purposes of section 136.1, " 'Victim' means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).) In July 2018, when Reyes told Evelyn (directly and through Estes) not to call the police, there was "reason to believe" Evelyn was a victim not only of a past crime a month before, but a current, ongoing course of criminal conduct, which is why it was necessary to issue multiple protective orders. And his advice to call him, and not to call the police, in the event of a future violation of the protective order amounted to dissuading the report of a future crime. (See § 166, subd. (a)(4).) The statutory text suggests Evelyn was also a "witness." " 'Witness' means any natural person, (i) having knowledge of the existence or nonexistence of facts relating to any crime, . . . or (iii) who has reported any crime to any peace officer, prosecutor, probation or parole officer, correctional officer or judicial officer, . . . or (v) who would be believed by any reasonable person to be an individual described in [those subparagraphs]." (§ 136, subd. (2).) When Reyes told Evelyn not to call the police on July 3, she had knowledge of, and had reported, Jacques's criminal conduct toward her. Thus, in early July,

13

Evelyn qualified both as someone against whom "a crime *is* being . . . perpetrated" (§ 136, subd. (3), italics added) and who "*is* witness to a crime" (§ 136.1, subd. (b), italics added).  And not only that, the People argue, but there was every reason to expect her present "victimization" (§ 136.1, subd. (b)(1)) would continue into the future—indeed, allegedly that is what Reyes expected too—so it is perfectly sensible to apply the statute to a future event.

But not to be outdone with textual analysis, Reyes makes a strong case for the opposite point of view.  He points out that section 136.1, subdivision (b), covers dissuasion of "another person who has been the victim of *a crime* or who is witness to *a crime*" (§ 136.1, subd. (b), italics added) from "[m]aking any report of *that victimization*" (*id.*, subd. (b)(1), italics added). According to Reyes, the repeated reference in section 136.1, subdivision (b), to "a crime"—which suggests the statute is concerned with reporting a discrete event—together with the structure of the operative sentence in section 136.1, subdivision (b), indicates that the antecedent for the key phrase "that victimization" is an already completed crime known to a witness or victim. He contends that the evidence offered at the preliminary hearing focused not on past or ongoing conduct, but on criminal conduct that might come about in the future.[7]  Indeed, he points out, this continues to be how the People frame

_____

[7] Sanchez's testimony at the preliminary hearing included this exchange:  "Q. And Ms. Olivas had stated that Mr. Reyes told her in the future not to call the police, but to call him instead?  [¶] A. That's correct." Sanchez also confirmed that Evelyn said Reyes told her that "if at some point she saw Jacques . . . around her property or at her home to call . . . Reyes and not the police."  In addition, the prosecutor, during closing argument at the preliminary hearing, asserted that Reyes told Evelyn that "if Mr. Olivas is to violate the restraining order again, if she's to see him around her house, in her area in any way, shape or form, that she is not to call the police and that

14

the section 136.1, subdivision (b)(1) issue in this appeal, arguing in their opening brief that we are dealing with dissuasion "from reporting . . . a crime that may occur in the future."

Factually, the People take issue with Reyes's reading of the record, pointing out that Jacques's conduct may not be neatly divisible into past, completed crimes on the one hand, and separate and unrelated possible future crimes on the other. Instead, they urge us to apply the principle that, in reviewing the magistrate's order holding Reyes to answer on Count 1, we must draw all reasonable inferences in favor of the information (*People v. Garcia* (2018) 29 Cal.App.5th 864, 871), and the evidence supports the view that Jacques's abuse of Evelyn was an ongoing course of conduct. If an attempt to dissuade a victim or witness from reporting such conduct violates section 136.1, subdivision (b)(1), then there was probable cause to hold Reyes to answer for that offense, i.e., " 'the evidence is such that "a reasonable person could harbor a strong suspicion of the defendant's guilt." ' " (*Garcia, supra*, at p. 871.) Reyes points out, correctly we think, that it is his conduct, not Jacques's, that must fall within the statute, and there is no allegation here that he carried out an ongoing effort to dissuade the reporting of a past crime.

she is to call him instead," and urged application of the statute where, "even though the crime hasn't happened yet, the dissuading has happened." Both the magistrate and the superior court appear to have taken the view, in light of the evidence, and the People's arguments for application of section 136.1, subdivision (b)(1), that the alleged dissuasion related to a hypothetical future crime. The magistrate remarked, for example, that there was evidence Evelyn "was told not to report a future violation of the restraining order." We note the prosecution did not limit itself to such a broad theory at the preliminary hearing, but instead presented in briefing and oral argument before the magistrate the theory that the statute applied because Jacques engaged in ongoing abuse of Evelyn.

Even accepting the premise of the People's argument that we are bound to read the record in their favor, as we must, we are still left with uncertainty in applying the opaque statutory term "that victimization" (§ 136.1, subd. (b)(1)), which is temporally neutral. To resolve this issue, we must move down the hierarchy of aids to statutory construction from statutory text and structure to legislative purpose. The purpose of section 136.1, the People point out, is to promote cooperation with law enforcement by criminalizing the conduct of those who seek to short-circuit investigatory efforts by dissuading victims and witnesses from reporting crime. (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1349.) Reyes's literal interpretation of the statute, we are told, would undermine this manifest purpose. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 ["A literal construction of an enactment . . . will not control when such a construction would frustrate the manifest purpose of the enactment as a whole."].)

Reyes does not dispute the importance of the overall objective urged by the People, but argues that casting the issue at such a broad level of generality brings no clarity to what we must decide. Just the opposite, he contends, by accepting the People's reading of the statute, we would not be advancing this statutory purpose, but placing within its scope an impossibly difficult-to-define range of statements made to potential victims who have not yet been victimized and to potential witnesses who have not yet witnessed victimization. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1167 [" '[N]o statute . . . pursues its "broad purpose" at all costs.' "]; *ibid.* [" ' "[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." ' "].)

16

Pitted against Reyes's claim that we should not assume the Legislature meant section 136.1, subdivision (b)(1), to cover reports about inchoate future crimes is the People's appeal to practical consequences: If the statute is not construed to cover reports about ongoing criminal conduct that may extend into the future, the People argue, we would be draining it of vitality in cases where dissuasion takes place by an accumulation of acts over time, classically illustrated in the context of domestic violence. (E.g., *People v. Torres* (2019) 39 Cal.App.5th 849, 858 [in case involving conviction under § 136.1, subd. (b)(1), appellate court stated: "Section 136.1 contemplates a continuous course of conduct or a series of acts over a period of time."]; *People v. Salvato* (1991) 234 Cal.App.3d 872, 883 [construing any "act" of dissuasion accompanied by force or by the express or implied threat of force to include a course of conduct].) We acknowledge the force of this argument. Because the in terrorem effect of threatened future abuse is often what makes dissuasion so insidious in domestic violence cases, that makes good sense.

But we find this principle ultimately unhelpful in resolving the issue before us. In concluding that dissuasion under section 136.1 can consist of a continuous course of conduct, the *Torres* and *Salvato* courts relied on the terms in section 136.1 that refer to the conduct of *the alleged dissuader*— "prevent" and "dissuade." (§ 136.1, subds. (a)(1)–(2), (b) [criminalizing the conduct of one who "prevents," "dissuades," or "attempts to prevent or dissuade" a victim or witness from testifying, reporting criminal activity to law enforcement, or taking other specified actions]; *People v. Torres, supra,* 39 Cal.App.5th at p. 858 [" ' "Prevent" and "dissuade" denote conduct which can occur over a period of time as well as instantaneously.' "], quoting *People v. Salvato, supra*, 234 Cal.App.3d at p. 883.) Our task in this case is to determine the meaning of different statutory language—the phrase "that

17

victimization" in section 136.1, subdivision (b)(1), which refers to *the underlying criminal conduct* that the defendant must attempt to prevent or dissuade a victim or witness from reporting.

Of course, the perpetrator of the underlying criminal conduct may in some cases be the same person alleged to have done the dissuading (e.g., *People v. Torres, supra*, 39 Cal.App.5th at p. 858), but that will not always be true, and it is not true here. More importantly, whether or not the same person is the underlying perpetrator and the dissuader, the relevant statutory language covering the two types of conduct, as we have noted, is different. While the terms "prevent" and "dissuade" (§ 136.1, subds. (a)(1)–(2), (b)) can include ongoing *dissuasive* conduct, that does not answer the question posed here as to whether the phrase "that victimization" (*id.*, subd. (b)(1))—the criminal activity that the dissuader allegedly tried to get the victim or witness not to report—includes ongoing or future *underlying* conduct.

And as discussed above, there is a strong textual argument that it does not. This portion of section 136.1 criminalizes an attempt to prevent or dissuade a "victim of *a crime*" or "witness to *a crime*" (*id.*, subd. (b), italics added) from reporting "*that* victimization" (*id.*, subd. (b)(1), italics added). Reyes contends the phrase "that victimization" refers back to a discrete, individual underlying crime ("a crime") that occurred in the past. If he is correct about that, then, even if he could be said to have engaged in a course of dissuasive conduct, he did not violate section 136.1, subdivision (b)(1), if what he did was aimed at dissuading Evelyn from reporting a future or ongoing underlying crime (rather than a past one) that falls outside the scope of the statutory phrase "that victimization."

18

We hasten to add that it is not at all clear the alleged facts here support a conclusion that Reyes did engage in a course of dissuasive conduct (even if that were the dispositive issue). He is alleged to have spoken directly with Evelyn only once, on July 3. All of the evidence offered by the People as to what he allegedly said, did and did not do after July 3 simply bears on whether in that one conversation he, in fact, impersonated a district attorney and told Evelyn to call him rather than the police in the event she felt the need to do so in the future.

In addition to his textual argument, Reyes invokes due process principles. In support of his position that both counts of the information were properly dismissed, he contends that no provision of the witness tampering statutory scheme applies, that what he is charged with falls within the gaps in the scheme, and that, to accept the People's position, on either count, would raise serious due process concerns. According to Reyes, no California appellate court has ever addressed the issue presented on the facts of this case, and "[t]o [his] knowledge, no one has ever before been charged in California with a violation of [section 136.1, subdivision (b)(1),] arising solely from a circumstance in which the defendant allegedly sought to dissuade a witness from reporting a crime that had not yet occurred."[8] To resolve this issue against him on this record under either statute, Reyes argues, would be such an unforeseeable and unexpected result as to violate due process.

_____

[8] The question we are dealing with has been noted by two federal district courts (*Ek v. Foulk* (E.D.Cal. May 11, 2016, No. 2:13-cv-1649 KJN P) 2016 U.S.Dist. Lexis 62580, *24; *Louie v. Frauenheim* (E.D.Cal. Jan. 27, 2015, No. 2:12-cv-02678-JKS) 2015 U.S.Dist. Lexis 9870, *17), both addressing habeas corpus petitions arising from the same California state court prosecution, but neither court had occasion to address the issue.

In granting Reyes's section 995 motion, the superior court embraced this due process argument. We see no basis for going that far. We address the section 137, subdivision (b) count separately below, but with respect to count 1, the People's proffered reading of section 136.1, subdivision (b)(1), is not so untethered to the statute that, if adopted, it would come as a bolt from the blue.[9] Not only does the People's proposed construction have a basis in the statutory language, but there are a number of cases applying section 136.1, subdivision (b), to future reports of criminal activity by victims and witnesses. For example, in *People v. Pettie* (2017) 16 Cal.App.5th 23, 32–33 (*Pettie*), a witness, Delgadillo, reported to police that defendant Garcia, who was dating Delgadillo's ex-wife, had hit Delgadillo's daughter. The police did not arrest Garcia at that time. (*Ibid.*) Three weeks later, while Delgadillo and defendant Lanford were watching football at Delgadillo's cousin's house, Lanford questioned Delgadillo about calling the police on Garcia. (*Ibid.*) Later, outside the house, defendants Garcia, Lanford, and Pettie (along with a fourth man) assaulted Delgadillo, and one of them called him a " 'cop caller.' " (*Ibid.*)

After being convicted of multiple crimes, including witness dissuasion in violation of section 136.1, subdivision (c)(1) and (2) (dissuasion by force or threat, and dissuasion in furtherance of a conspiracy) (*Pettie*, *supra*,

---

[9] *United States v. Lanier* (1997) 520 U.S. 259, 266–267 ("[A]lthough clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, [citations], due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope."); *People v. Blakeley* (2000) 23 Cal.4th 82, 91 ("Courts violate constitutional due process guarantees (U.S. Const., 5th and 14th Amends.; Cal. Const., art. I, § 7) when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct.").

16 Cal.App.5th at pp. 32, 40–41), the defendants in *Pettie* argued there was insufficient evidence supporting the dissuasion charges because "the only evidence of an attempt by Delgadillo to report to the police had already happened, such that the evidence could only show defendants were punishing him for making a past report" (*id.* at p. 54). The appellate court disagreed, stating: "[G]iven the evidence that Lanford questioned Delgadillo about calling the police and the evidence he was called a 'cop caller' just before the attack, a jury could reasonably infer defendants were attempting to prevent him from making *future* reports to the police." (*Ibid.*)

The *Pettie* court stated: "Proof of an attempt to prevent any future report to the police was sufficient to satisfy the statute." (*Pettie, supra,* 16 Cal.App.5th at pp. 54–55; accord, *People v. Wahidi* (2013) 222 Cal.App.4th 802, 806 ["If the defendant's actions or statements are ambiguous, but reasonably may be interpreted as intending to achieve the future consequence of dissuading the witness from testifying, the offense has been committed."]; see *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1344–1345 [the defendant's words not only expressed dissatisfaction with witness's past testimony but also attempted to dissuade her from giving any further testimony in the future]; *People v. Ford* (1983) 145 Cal.App.3d 985, 989 [jury could interpret defendant's statement "as a warning or threat not to testify in the future"].)

Broadly read, *Pettie* and *Mendoza* do offer a rough analogy—since they involve dissuasion of future reports—but their holdings can be taken only so far because, as Reyes points out, on their facts those cases involved past crimes. (See *Pettie, supra,* 16 Cal.App.5th at p. 33; *People v. Mendoza, supra,* 59 Cal.App.4th at pp. 1337, 1344–1345.) According to him, these cases may be reconciled with his reading of section 136.1, subdivision (b)(1), because, he

21

readily concedes, "the statute punishes attempts to dissuade future *reports* of crimes that had *already been committed* at the time of the attempted dissuasion." In his reading, these cases do not hold the statute applies to attempts to dissuade future reports of ongoing or future criminal conduct and provide no basis to depart from what he views as the unambiguous words of the statute. Although Reyes is correct in distinguishing *Pettie* and *Mendoza* on this ground—they do, as he observes, involve completed crimes—we are not persuaded that, as he urges us to hold, the plain language of the statute compels his interpretation of section 136.1, subdivision (b)(1), any more than it compels adoption of the People's interpretation.

Though we are unconvinced that this case presents an issue of constitutional magnitude, we have no doubt that section 136.1, subdivision (b)(1), is ambiguous as applied to the record before us. (*Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1179 [" 'An ambiguity arises when language is reasonably susceptible of more than one application to material facts.' "].) In the absence of definitive guidance to resolving that ambiguity based on statutory text, structure, or overall purpose, and in the absence of controlling case law, we asked the parties to address at oral argument whether the legislative history surrounding the 1980 enactment of section 136.1—which is the origin of subdivision (b)(1), as presently worded—might be of help. (See Stats. 1980, ch. 686, § 2.1, pp. 2076–2077.) Neither side found anything useful; and after undertaking our own review of the legislative history, nor did we. Having consulted the usual aids to eliminating ambiguity in statutory construction—text, context and structure, overall purpose, relevant case law, legislative history—and having found a satisfactory answer in none of them, we conclude that this is one of those rare

22

cases where the rule of lenity applies. " 'That rule generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. . . . [The] 'rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." ' " ' " (*People v. Nuckles* (2013) 56 Cal.4th 601, 611.) Here, after applying all other available tools of construction, we can do no more than " ' " 'guess what the legislative body intended.' " ' " (*Ibid.*)

Applying the rule of lenity as a tool of last resort, we therefore affirm the superior court's ruling that section 136.1, subdivision (b)(1), does not apply in this case. It is for the Legislature to say otherwise. Although we decline to adopt Reyes's due process attack on the People's reading of this statute, we do note that the rule of lenity " ' "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. [Citation.] ('[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity')." ' " (*People v. Avery* (2002) 27 Cal.4th 49, 57.) In the meantime, we agree with the superior court's observation that a court should not "speculate as to what the Legislature intended." If Reyes's conduct on this record is a crime under section 136.1, subdivision (b)(1), the court correctly pointed out, "we need the Legislature to tell us."

**C.** *Count 2: Violation of Section 137, Subdivision (b)*

With little explanation, the superior court dismissed count 2, alleging a violation of section 137, subdivision (b), along with count 1, alleging a violation of section 136.1, subdivision (b)(1). The court appeared to apply the

23

same rationale for the dismissal of both counts. Our analysis of section 137, subdivision (b), leads to a different result, requiring reversal, with respect to count 2. Within the context of the statutory scheme as a whole, we are persuaded that the conduct shown by the proof at the preliminary hearing, at least prima facie—dissuasion of future reporting of crime by fraud—fits within that provision. Here, as we explain below, by contrast to the dearth of available guidance in applying section 136.1, subdivision (b)(1), there is instructive California Supreme Court precedent and we are bound to follow it.

### 1. The Statute Applies to Reyes's Alleged Conduct

Count 2 of the information charged Reyes with a violation of section 137, subdivision (b), which states: "Every person who attempts by force or threat of force or *by the use of fraud* to induce any person to give false testimony or withhold true testimony or to give false material information pertaining to a crime to, or *withhold true material information pertaining to a crime from, a law enforcement official* is guilty of a felony . . . ." (Italics added.) The People argued that Reyes used fraud (i.e., he told Evelyn he was a district attorney) to induce her to withhold information from law enforcement.

On its face, the language of section 137, subdivision (b), applies to Reyes's alleged conduct—he allegedly lied about his position to induce Evelyn not to call the police and provide them with information about Jacques's criminal conduct. Reyes contends, however, that courts have construed section 137 as applying only to an attempt to influence the *content* of testimony or reports to law enforcement, and does not prohibit an attempt to dissuade or prevent a person from testifying or reporting altogether. Reyes contends that, since the evidence at the preliminary hearing showed he attempted to dissuade Evelyn from contacting the police at all if Jacques

24

violated the restraining order (rather than seeking to influence the content of a report she might make), the evidence did not establish probable cause to believe he violated section 137, subdivision (b). The superior court dismissed this charge, although without discussing its reasoning at length. Reviewing de novo the question raised as to the scope of section 137, subdivision (b), we disagree with Reyes and hold that it does apply to the conduct alleged here.

Reyes relies principally on *People v. Womack* (1995) 40 Cal.App.4th 926 (*Womack*). In that case, the defendant and an accomplice brutally attacked a witness, and the defendant was convicted of attempted murder and a violation of section 137, subdivision (b), which the appellate court described as "attempting to induce a witness to give false or to withhold true testimony." (*Womack*, *supra*, at pp. 928–929.) The defendant argued the latter conviction was not supported by the evidence and was inconsistent with the attempted murder conviction. (*Id.* at p. 929.) The appellate court agreed, holding the defendant's conduct was covered by section 136.1, subdivision (c)(1) (prohibiting the use of force or threat to attempt to prevent or dissuade a witness from testifying), rather than by section 137, subdivision (b). (*Womack*, *supra*, at pp. 929–932, 934.)

The *Womack* court stated: "The entire sense of Penal Code section 137 is that testimony will be given, but the perpetrator will attempt to *influence* the testimony given." (*Womack*, *supra*, 40 Cal.App.4th at p. 930.) In contrast, the court stated, both section 136.1 and section 138 (a statute pertaining to bribery of witnesses) "clearly contemplate that the perpetrator will prevent or dissuade a prospective witness from *giving* testimony, or will attempt to do so. Preventing or dissuading a witness from testifying altogether is incompatible with influencing or shaping the testimony the witness gives." (*Womack*, *supra*, at p. 931.) The court concluded that, "[i]f

25

preventing or dissuading a witness from testifying is included in inducing a witness to withhold true testimony . . . , then sections 136.1 and 138 are surplusage. Adopting this construction of section 137 would be repugnant to all rules of statutory construction." (*Ibid.*)

The court in *People v. Fernandez* (2003) 106 Cal.App.4th 943 (*Fernandez*) discussed the interpretive approach adopted in *Womack*, noting that *Womack* "narrowly construed section 137" to avoid an interpretation that would result in sections 136.1 and 138 being "mere surplusage." (*Fernandez, supra*, at p. 949.) The *Fernandez* court continued: "The *Womack* decision is significant . . . because the court refused to stretch the language of the statute at issue to cover the defendant's conduct when another statute within the same chapter of the Penal Code clearly applied." (*Ibid.*) In *Fernandez*, the court, relying in part on this principle, declined to interpret section 136.1, subdivision (b)(1)'s prohibition on attempts to dissuade a "report" of a crime as encompassing attempts to influence a witness's preliminary hearing *testimony*. (*Fernandez, supra*, at pp. 945, 947–951.)

In reaching its conclusion, the *Fernandez* court noted that other statutory provisions expressly applied to attempts to interfere with a witness's testimony. "[A]n effort to influence the contents of a victim's or witness's preliminary hearing testimony is governed by section 137, and an effort to prevent a victim or witness from testifying entirely is governed by sections 136.1, subdivision (a) and 138, subdivision (a). Section 136.1, subdivision (b)(1) should not be construed to punish efforts to prevent or influence testimony when it does not do so expressly, and there are other statutes within the same scheme that cover such conduct." (*Fernandez, supra*, 106 Cal.App.4th at pp. 949–950.) The "correct statute" for prosecuting the defendant in that case, the *Fernandez* court held, was section 137,

subdivision (c) (a misdemeanor offense that encompasses efforts to influence testimony). (*Fernandez*, *supra*, at p. 951.)

*Womack* and *Fernandez* do not persuade us that we should construe section 137, subdivision (b), as being inapplicable to Reyes's alleged effort to use fraud to induce Evelyn to withhold information from the police. Unlike those cases, we are not presented here with a scenario in which a different witness-tampering statute clearly applies to Reyes's alleged use of fraud. (Cf. *Fernandez*, *supra*, 106 Cal.App.4th at pp. 949–950; *Womack*, *supra*, 40 Cal.App.4th at p. 931.) Specifically, we reject Reyes's suggestion that, if section 137, subdivision (b), is applied to his conduct, "[section] 136.1[,] [subdivision ](b)(1) would be surplusage." Neither section 136.1, subdivision (b)(1), nor any other subdivision of that statute expressly covers the use of fraud to induce a witness to withhold information from law enforcement.[10] We decline to extend *Womack* to preclude a prosecution under section 137, subdivision (b), in these circumstances.

More pertinent than *Womack* and *Fernandez* is *People v. Pic'l*, *supra*, 31 Cal.3d at pp. 735, 742 & fn. 5, where our Supreme Court held that evidence showing the defendant sought to bribe a victim not to testify at all also supported a charge that he sought to "influence" the victim's testimony. The defendant in *Pic'l*, an attorney, met with a theft victim, who signed a

---

[10] Subdivisions (a) and (b) of section 136.1 prohibit attempts to dissuade a victim or witness from taking certain actions, including testifying and making a report to the police. (*Id.*, subds. (a)(1)–(2), (b)(1)–(3).) Those offenses are wobblers punishable as misdemeanors or felonies (*id.*, subds. (a), (b)), but the same acts are felonies when committed under any of the circumstances specified in section 136.1, subdivision (c), including where the act is committed knowingly and maliciously and is accompanied by force or the threat of force (*id.*, subd. (c)(1)). The use of fraud is not specified as an element of any of these offenses.

written agreement (drafted by the defendant) not to pursue charges if his property was returned. (*Id.* at pp. 735–736.) The defendant was charged with multiple offenses, including two bribery charges: (1) former section 136½, bribing a witness not to attend trial,[11] and (2) section 137, subdivision (a), bribing a witness to withhold testimony.[12] (*Pic'l, supra*, at p. 735.)

The superior court in *Pic'l* dismissed the bribery charges under section 995, on the grounds that (1) the theft victim was working with the police at the time he entered the agreement with the defendant, and therefore the parties to the transaction had no shared criminal intent, and (2) the written agreement did not expressly refer to the victim's nonattendance at trial or his withholding of testimony. (*Pic'l, supra,*

---

[11] The applicable version of former section 136½ provided: " 'Every person who gives or offers or promises to give to any witness or person about to be called as a witness, any bribe upon any understanding or agreement that such person shall not attend upon any trial or other judicial proceeding, or every person who attempts by means of any offer of a bribe to dissuade any such person from attending upon any trial or other judicial proceeding, is guilty of a felony.' " (*Pic'l, supra*, 31 Cal.3d at p. 737.) (That offense is now set forth in § 138, subd. (a).)

[12] The version of section 137, subdivision (a), that applied to Pic'l's alleged crimes stated: " '(a) Every person who gives, or offers, or promises to give, to any witness, or person about to be called as a witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby influenced is guilty of a felony.' " (*Pic'l, supra*, 31 Cal.3d at p. 742.) The current version of section 137, subdivision (a), encompasses efforts to influence information provided to law enforcement as well as testimony. (§ 137, subd. (a) ["Every person who gives or offers, or promises to give, to any witness, person about to be called as a witness, or person about to give material information pertaining to a crime to a law enforcement official, any bribe, upon any understanding or agreement that the testimony of such witness or information given by such person shall be thereby influenced is guilty of a felony."].)

31 Cal.3d at pp. 735, 737, 740, 742.) The Supreme Court reversed as to both bribery charges. (*Id.* at p. 734.) As to the charge under former section 136½ (bribery not to attend trial), the court held it was not necessary for the victim to have criminal intent as long as the defendant did, and the written agreement was an agreement not to attend trial. (*Pic'l, supra*, 31 Cal.3d at pp. 739, 741–742.)

Turning to the section 137, subdivision (a) charge (bribery to withhold testimony), the court held in a much briefer discussion that its earlier analysis of the charge under former section 136½ applied to this count as well. (*Pic'l, supra*, 31 Cal.3d at p. 742.) As to whether there was evidence that the defendant sought to "influence" the victim's testimony within the meaning of section 137, subdivision (a), the court stated the definition of that term is "provided by implication in [section 137,] subdivision (b)," which prohibited inducements " 'to give false testimony or withhold true testimony.' " (*Pic'l, supra*, at p. 742 & fn. 5.) The court continued: "It is apparent that an inducement to withhold testimony is a form of the 'influence' of testimony prohibited in [section 137,] subdivision (a)." (*Id.* at p. 742, fn. 5.) The court then concluded: "The grand jury had probable cause to believe that defendant intended to influence [the victim's] testimony *by way of persuading him to withhold it altogether*, in exchange for the return of his property." (*Id.* at p. 742, italics added.)

Of course, in *Pic'l*, as noted, the applicable version of the statute the court was discussing in this passage—section 137, subdivision (a)—applied only to efforts to influence " 'testimony,' " and did not apply to efforts to influence a witness's report to law enforcement, so the court had no occasion

29

to discuss that scenario.[13] (*Pic'l, supra*, 31 Cal.3d at p. 742.)  But in our view, the analysis employed by the *Pic'l* court applies here to section 137, subdivision (b)'s prohibition on the use of fraud to attempt to "induce any person to give false testimony or withhold true testimony or to give false material information pertaining to a crime to, or withhold true material information pertaining to a crime from, a law enforcement official."  Here, too, it may be said, the prohibition of an inducement to "withhold" information encompasses both attempts to influence the substance of reports as well as to withhold reports altogether.

At oral argument, Reyes's counsel described this passage in *Pic'l* as "loose language."  We think that underplays its significance.  " 'Even if properly characterized as dictum, statements of the Supreme Court should be considered persuasive.' "  (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169; accord *People v. Trice* (1977) 75 Cal.App.3d 984, 986–987 ["Whether the Supreme Court's obvious awareness of the consequences of its statement elevates the dictum to a holding or whether it is a dictum that we must follow, does not make much difference.  We follow."].)  Just as section 137, subdivision (a)'s prohibition on bribing a witness to "influence" his or her testimony covers (by reference to the term "withhold" in § 137, subd. (b)) a bribe to induce the witness to "withhold [his or her testimony] *altogether*" (*Pic'l, supra*, 31 Cal.3d at p. 742, italics added; see *id.* at p. 742, fn. 5), the prohibition in section 137, subdivision (b), on the use of fraud to induce a witness to "withhold true material information pertaining to a crime" from law enforcement must, a fortiori, encompass the use of fraud to

---

[13] The *Pic'l* court even noted that it was not addressing the implications of an amendment to the other statute at issue (former § 136½), expanding its reach from bribery not to attend " 'trial' " to bribery not to attend " 'trial or other judicial proceeding.' "  (*Pic'l, supra*, 31 Cal.3d at pp. 737, 741, fn. 4.)

persuade the witness to withhold such information altogether by not making a report to law enforcement at all.

### 2. Due Process

Reyes contends that, in light of *Womack* and other case law construing section 137, subdivision (b), it would violate his due process rights to prosecute him under that statute. We disagree.

The language of section 137, subdivision (b), on its face applies to Reyes's alleged use of fraud to induce Evelyn to withhold information from the police, providing fair notice that conduct was prohibited. The notice provided by the statute is bolstered by the Supreme Court's conclusion in *Pic'l* that section 137, subdivision (a)'s prohibition on the use of bribery to "influence" a witness's testimony includes (by reference to the term "withhold" in § 137, subd. (b)) an attempt to induce the witness to withhold *all* of his or her potential testimony. (*Pic'l*, *supra*, 31 Cal.3d at p. 742 & fn. 5.) That conclusion provided notice that the use of fraud to attempt to induce a person to "withhold" true material information from law enforcement under section 137, subdivision (b), similarly encompasses an attempt to induce the person to withhold *all* such information by not contacting the police at all.

Moreover, none of the cases cited by Reyes—*Womack*, *Fernandez*, and *People v. Brown* (2016) 6 Cal.App.5th 1074—holds that section 137, subdivision (b), does *not* apply to the use of fraud to induce a person to refrain from reporting a crime to the police. *Womack* held section 137, subdivision (b), did not apply to a use of nearly deadly force to prevent a witness from testifying, where section 136.1, subdivision (c)(1), applied to that conduct. (*Womack*, *supra*, 40 Cal.App.4th at pp. 928–932.) *Fernandez* did not involve a prosecution under section 137, subdivision (b); the court there held the term "report" in section 136.1, subdivision (b)(1), did not

31

encompass witness testimony. (*Fernandez, supra*, 106 Cal.App.4th at pp. 945–946, 951–952.) And in *Brown,* a case involving the use of threats against a witness, the appellate court rejected a claim that the prosecution *should* have proceeded under section 137, subdivision (b), instead of section 136.1, subdivision (c)(1). (*Brown, supra,* 6 Cal.App.5th at pp. 1079–1085.) Prosecuting Reyes under section 137, subdivision (b), does not violate due process.[14]

## III. CONSIDERATIONS FOR THE PARTIES ON REMAND

This is a troubling case for a number of reasons, starting with the fact that we are dealing with criminal charges brought by a county prosecutor against a deputy public defender who regularly appears as an adversary against the office that charged him. The stakes are high for this lawyer. Conceivably, a final conviction on the remaining section 137, subdivision (b) felony count could require summary disbarment. (Bus. & Prof. Code, § 6102,

---

[14] Reyes contends that, because the People failed to present arguments on this due process issue in the superior court and in their opening appellate brief, they forfeited any challenge to the trial court's ruling on this "distinct" issue. He argues we should affirm the dismissal of both counts of the information on due process grounds—since his arguments on that issue stand unrebutted—without considering the merits of the statutory interpretation issues. We are unpersuaded that there was a forfeiture here. Basically, we do not agree with the premise that the constitutional issues raised by Reyes are "distinct" from the statutory interpretation arguments offered by both sides. As Reyes notes, the superior court observed during oral argument on the section 995 motion that Reyes had presented both statutory interpretation and "notice" arguments. But later in the hearing, when the court announced its ruling granting the motion, the court did not state that it found the due process notice argument to be a sufficient and independent ground for dismissal of the charges. As we read the record, the statutory construction and due process aspects of Reyes's challenges to both charges were closely entwined in the trial court proceedings, as they are here on appeal.

subd. (c); *In re Utz* (1989) 48 Cal.3d 468, 480–486.) These features of the case prompt us to conclude with some observations that go beyond the legal sufficiency of the charges.

Our reversal as to the section 137, subdivision (b) count should not be taken as an endorsement. We reverse because the test for evidentiary sufficiency is exceedingly low; because, as presented, the evidence supports the charge under that standard; and because the law compels the result we reach. But we reverse with reservations. Suffice it to say that, while there may be more incriminating evidence that was not put forward, at this stage the case the People have made is far from overwhelming.

Few may remember the case of the real-life Ray Donovan (not the figure in the TV show of the same name), who served as Secretary of Labor under President Ronald Reagan. Secretary Donovan was indicted in New York State for alleged corruption linked to organized crime after a federal special prosecutor found there was insufficient credible evidence to support the charges, but a county prosecutor tried him anyway. In a press conference following his acquittal, when reminded that the office of the special prosecutor found the evidence against him wanting, Donovan plaintively asked, " 'Which office do I go to to get my reputation back?' " (Raab, *Donovan Cleared of Fraud Charges by Jury in Bronx; For Ex-Cabinet Member, End of 'Nightmare'—One-Ballot Verdict*, N.Y. Times (May 26, 1987) pp. A1, B2.) In the event Reyes, too, is acquitted, he could find himself in a similar position, unless there is more to this case than meets the eye. And during the pendency of the case, he will remain under a cloud, since he has a mandatory obligation to report the charges, and he must deal with whatever inquiries the State Bar may approach him with.

Rule 3.8 of the State Bar Rules of Professional Conduct is entitled "Special Responsibilities of a Prosecutor." Under subdivision (a) of that rule, a prosecutor shall "not institute or continue to prosecute a charge that the prosecutor knows is not supported by probable cause." (Fn. omitted.) On the evidence presented at the preliminary hearing, we see no basis to question the subjective good faith of the prosecutor who elected to bring the charges against Reyes in this case. But it must be borne in mind that rule 3.8 is subject to the overarching precept—cited in a comment to the rule providing interpretive guidance—that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate." (Rules Prof. Conduct, rule 3.8, com. [1].)

"The importance, to the public as well as to individuals suspected or accused of crimes, that [the prosecutorial function] be exercised 'with the highest degree of integrity and impartiality, and with the appearance thereof' [citation] cannot easily be overstated. The public prosecutor ' "is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." ' " (*People v. Eubanks* (1996) 14 Cal.4th 580, 589 (*Eubanks*).)

Before the magistrate in this case, Reyes's counsel opened the proceedings with a suggestion that this case could have been "easily resolved" had it not been for a "hostile climate" between the prosecutor's office and the office of the public defender. The magistrate, quite correctly, took that comment as zealous argument directed to the atmospherics of the proceeding,

not something that bore on the issues to be decided at the preliminary hearing.  But if, as things unfold in the case on remand, it turns out there is substance to the suggestion Reyes's counsel made, his argument may point up a number of issues touching on why these particular charges were brought in the first place, and whether their pursuit is consistent with the prosecutorial duty to see that " ' "justice shall be done." ' " (*Eubanks*, *supra*, 14 Cal.4th at p. 589.)

It goes without saying that personal bias or animosity must never play a part in the exercise of prosecutorial charging discretion.  Indeed, that was the starting point of analysis in *Eubanks*, an opinion authored by Justice Werdegar addressing the issue of prosecutorial conflicts of interest.  *Eubanks* teaches that the potential for such conflicts can arise in circumstances where a prosecutor's judgment is "impaired by institutional interests" as well as "by personal ones." (*Eubanks*, *supra*, 14 Cal.4th at p. 595.)  "[A] prosecutor may [also] have a conflict if institutional arrangements link the prosecutor too closely to a private party, for example a victim, who in turn has a personal interest in the defendant's prosecution and conviction." (*Id*. at p. 596.)

"As Judge Friendly put it in *Wright v. United States* [(2d Cir. 1984) 732 F.2d 1048, 1056], a prosecutor 'is not disinterested if he has, or is under the influence of others who have, an axe to grind against the defendant.' [Italics omitted.]  The tie that binds the prosecutor to an interested person may be compelling though it derives from the prosecutor's institutional objectives or obligations." (*Eubanks*, *supra*, 14 Cal.4th at p. 596.)  And when one adds to that the special problems that necessarily attend the prosecution of a defense lawyer who is currently adverse to the charging office, for conduct arising out of an ongoing client representation—which creates a risk that the prosecution may undermine the Sixth Amendment rights of that

lawyer's client—the scenario we have in this case presents a thicket of prosecutorial ethics concerns.

Rule 3.8 of the Rules of Professional Conduct on its face sets such a low bar that if the paramount duty of prosecutors to see that " ' "justice shall be done" ' " (*Eubanks*, *supra*, 14 Cal.4th at p. 589) is not kept in mind as an accompanying standard, the heightened level of ethical obligation surrounding prosecutorial charging discretion may be treated as if it does not exist. Which is why we mention it here. "The boundaries of proper professional conduct for prosecutors can be debated, and in the absence of a judicial pronouncement, prosecutors acting in good faith can contravene whatever standards the courts would have chosen. Indeed, prosecutors may even be misled by the existing disciplinary provisions to believe that courts expect less of them than they actually do." (Green, *Prosecutorial Ethics as Usual* (2003) U.Ill. L.Rev. 1573, 1597.)[15]

"The nature of the impartiality required of the public prosecutor follows from the prosecutor's role as representative of the People as a body, rather

___

[15] To be sure, this may be less true today than it was in 2003. For example, in 2016, the Legislature enacted Penal Code section 141, subdivision (c), which makes a prosecutor's knowing suppression of relevant evidence a felony. Likewise, rule 3.8 of the Rules of Professional Conduct also makes clear that prosecutors' ethical obligations are broader than their constitutional obligations under *Brady v. Maryland* (1963) 373 U.S. 83. (See Rules Prof. Conduct, rule 3.8, com. [3].) But the exercise of prosecutorial charging discretion remains an area in which self-policing within prosecutorial offices remains the norm, and properly so. Because "prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from ' "the complex considerations necessary for the effective and efficient administration of law enforcement" ' " and "is founded, among other things, on the principle of separation of powers," it "generally is not subject to supervision by the judicial branch." (*People v. Birks* (1998) 19 Cal.4th 108, 134.)

than as individuals.  'The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People.  That body of "The People" includes the defendant and his family and those who care about him.  It also includes the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name.'  (Corrigan, *On Prosecutorial Ethics* (1986) 13 Hastings Const. L.Q. 537, 538–539.)"  (*Eubanks*, *supra*, 14 Cal.4th at pp. 589–590.)

These eloquent statements of what we expect from prosecutors, coming from several of our most esteemed jurists, must not be taken as mere words.  They must be put into action, internally within prosecutorial offices, by asking hard questions about whether charges should be brought or continued, and perhaps in some cases—which we would urge in this case—by soliciting a second opinion from the office of the Attorney General or from another county prosecutor.  Among the questions that should be asked here include whether bringing charges against a lawyer who is adverse to the charging office at the time charges are brought may carry the appearance of bias, and whether—in light of the state of the evidence—the section 137, subdivision (b) charge is a proportionate response to the alleged offense.[16]

Now, we readily grant that any calculated interference with the carrying out of law enforcement functions can have very serious public safety

---

[16] Cf. Little, *Proportionality as an Ethical Precept for Prosecutors in Their Investigative Role* (1999) 68 Fordham L.Rev. 723, 751 and footnote 140 (proposing the use of proportionality as an ethical principle guiding the scope of prosecutorial investigations, and pointing out that the "concept of proportionality would seem to be generally applicable in any area in which prosecutorial discretion is permitted to operate, for example, in charging, plea negotiation, trial tactics, and sentencing recommendations").

implications. And given the danger Evelyn faced from her son the night of August 25, 2018, and the early hours of the next day, that is an important consideration in this case. So we certainly do not mean to suggest that the questions we raise here may only be answered by concluding that a continued prosecution of the section 137, subdivision (b) charge could never be justified. In the end, the proper resolution of these questions is a matter of prosecutorial judgment. But we do wonder whether whoever made the decision to bring this charge—which appears to have been added as an afterthought when the section 136.1, subdivision (b)(1) charge was challenged—took into account the fact that it exposes Reyes, in effect, to the professional death penalty.[17]

We will put our concern plainly. We have no idea whether, before bringing felony charges, there was an effort by this district attorney to address perceived improper interference with victim reporting by Reyes, informally, through dialogue with the public defender and a demand for internal discipline, or by exploring whether contempt or other sanctions from the superior court might be sought first (since the alleged conduct, if it indeed took place, undermined a protective order). But regardless, given the gravity of Reyes's exposure on the section 137, subdivision (b) charge, it seems to us that, absent significantly stronger evidence than we have on this record, rolling out the prosecutorial equivalent of a howitzer to address the conduct charged here is hard to justify under rule 3.8 of the Rules of Professional Conduct, as interpreted in accordance with comment [1] to that rule.

---

[17] By contrast, as a wobbler, the section 136.1, subdivision (b)(1) charge always carried with it the potential that the court would be empowered to reduce it from a felony to a misdemeanor. And indeed, in denying the section 17, subdivision (b) motion without prejudice, the magistrate reserved judicial power to do that.

## IV.  DISPOSITION

The superior court's order granting Reyes's section 995 motion to set aside the information is affirmed in part and reversed in part.  The dismissal order is affirmed as to count 1 (the charge under § 136.1, subd. (b)(1)) and is reversed as to count 2 (the charge under § 137, subd. (b)).  The case is remanded for further proceedings on count 2.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
BROWN, J.

POLLAK, P. J., Concurring.

Although I agree that the lenity principle supports the trial court's order dismissing the Penal Code section 136.1, subdivision (b) charge, I do not consider the statute to be ambiguous, and believe that the order can be upheld based simply on the plain language of the measure. Section 136.1, subdivision (b) applies to one who prevents or dissuades "another person who has been the victim of a crime or who is witness to a crime" from reporting it. I do not believe the subsequent reference in the statute to "that victimization" creates any uncertainty as to whether the provision extends to dissuading one from reporting potential future offenses.

The principle of lenity arguably might apply to the alleged violation of Penal Code section 137, subdivision (b). That section prohibits inducing another to give false testimony or to withhold testimony "pertaining to a crime." The trial court apparently read that provision also to refer only to a crime already committed, and not to a possible future offense. But since that provision contains no language that refers grammatically to a crime that has already occurred, there is no reason to read any temporal limitation into the statute. Certainly there is every bit as much reason to prohibit the use of force, threats or fraud to prevent another from providing evidence of a crime one intends to commit as of a crime already committed.

                                                        POLLAK, P. J.

1

Trial Court: Solano County Superior Court

Trial Judge: Hon. William Harrison

Counsel: Krishna A. Abrams, District Attorney, Julie Underwood and
Karen Jensen, Deputy District Attorneys, for Plaintiff and
Appellant.

Arguedas, Cassman, Headley & Goldman,
Raphael M. Goldman, Theodore W. Cassman,
Cristina C. Arguedas for Defendant and Respondent.

A158095